FILED
2019 May-29 AM 09:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| DESTRY CORNELIUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Civil Action Number:** |
| v. | ) | |
| | ) | |
| BIRMINGHAM-JEFFERSON | ) | |
| COUNTY TRANSIT AUTHORITY, | ) | |
| | ) | **Plaintiff requests a trial by** |
| Defendant. | ) | **struck jury.** |

# COMPLAINT

## JURISDICTION

1. This is an employment discrimination action in which the Plaintiff alleges his former employer subjected him to unlawful discrimination because of his race and unlawful retaliation for his opposing racially discriminatory treatment of other employees.

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1343(4), 27 U.S.C. § 2201 and 2202. This Court had federal question jurisdiction over the Plaintiff's claims.

## VENUE

3. Defendant employed Plaintiff in Jefferson County, Alabama. Because Jefferson County, Alabama falls within the Southern Division of the United States District Court for the Northern District of Alabama, venue is proper.

## PARTIES

4. Plaintiff is a resident of Marshall County, Alabama who is over the age of 19.

5. Defendant, Birmingham-Jefferson Transit Authority, ("Defendant") is the public transportation operator in the city of Birmingham, Alabama.

6. In 1972, the Alabama Legislature passed enabling legislation permitting the formation of publicly operated transit authorities in Alabama, thereby creating the Defendant.

7. Created in 1972 to take over transit operations from private operators, Defendant operates 109 buses on 38 routes. It also operates paratransit and "vintage trolley" services.

8. Defendant operates under the branding MAX or Metro Area Express.

9. Defendant's service areas including Birmingham, Bessemer, Fairfield, Homewood, Mountain Brook, Hoover, and Vestavia Hills.

10. In 2017, Defendant employed 15 or more employees for 20 or more calendar weeks of the year.

11. In 2018, Defendant employed 15 or more employees for 20 or more calendar weeks of the year.

12. In 2019, Defendant employed 15 or more employees for 20 or more calendar weeks of the year.

13. Defendant is an employer for purposes of Title VII of the Civil Rights Act of 1964, as amended.

14. Defendant is an employer for purposes of 42 USC §1981.

**ADMINSTRATIVE PREREQUISITES**

15. Defendant terminated the Plaintiff's employment on May 30, 2017.

16. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in October 2017. (A copy is attached as Exhibit 1).

17. Plaintiff's EEOC Charge alleged race discrimination and retaliation.

18. Plaintiff filed his EEOC Charge within 180 days of May 30, 2017.

19. On or about October 27, 2017, the EEOC sent notice of Plaintiff's EEOC Charge to Defendant.

20. On December 19, 2017, the EEOC requested Defendant to submit a response to the Plaintiff's EEOC Charge.

20. On February 5, 2018, the Defendant submitted a response to Plaintiff's Charge of Discrimination to the EEOC.

21. On March 1, 2019, the EEOC issued to Plaintiff a Dismissal and Notice of Rights.

22. This action was filed within 90 days of March 1, 2019.

**COUNT ONE**
**TITLE VII – RACE DISCRIMINATION**
**(Termination)**

23. Plaintiff's race is Caucasian.

24. Plaintiff worked for the Defendant from July 23, 2012 to May 2017.

25. Plaintiff was qualified to hold positions he worked in for the Defendant.

26. During the events relevant to this action, Plaintiff worked in the position of Staff Accountant.

27. Plaintiff worked as a Staff Accountant for the Defendant from November 2015 to May 30, 2017.

28. During Plaintiff's employment with the Defendant, the Defendant demonstrated a preference for hiring and promoting African American employees to key positions.

29. Defendant's Executive Team consists of a Director of Operations, Director of Customer Care and Marketing, and Director of I.T.

30. Defendant's Executive Team is 100% African American.

31. Over sixty percent of the Defendant's Board Members are African American.

32. Plaintiff observed a pattern and practice of the Defendant of demoting and terminating Caucasian employees and replacing them with African American employees.

33. Plaintiff observed that Defendant scrutinized and was critical of the performance of Caucasian employees.

34. Plaintiff observed Defendant did not scrutinize African American employees' performance, nor was it critical of the performance of African American employees.

35. As a Staff Accountant, Plaintiff observed that his African American employees were not disciplined nor demoted for poor performance.

36. While Plaintiff believes discovery will identify and reveal other African Americans who received more favorable treatment than the Plaintiff and other Caucasian employees, he recalls the following instances of racially disparate treatment:

    a. Starr Culpepper, an African American female, and Darryl Grayson, an African American male were permitted to leave work early and without notice. They did not receive discipline; they were promoted.

    b. Sanchez Lee, an African American male was promoted because of his race and given a vehicle to drive. Mr. Lee had numerous unwarranted altercations with Plaintiff and other Caucasian employees but was not disciplined. Plaintiff observed Mr. Lee working under the influence of alcoholic beverages at work without discipline.

    c. Marshaun Brown, an African American male was not terminated even though he was found to have been driving a vehicle of the Defendant's without a valid driver's license. Part of Mr. Brown's job duties required him to make deliveries and deposits for the Defendant.

37. In March 2017, Defendant classified Plaintiff as a salaried employee.

38. As a salaried employee, Plaintiff was not paid based on the amount of time he worked.

39. As a salaried employee, Plaintiff was classified by the Defendant as exempt from overtime.

40. Because Plaintiff was a salaried employee, he was not required to clock in or clock out.

41. Defendant did not keep records of the time worked by salaried employees.

42. Defendant's attendance policy applied progressive discipline for infractions.

43. On May 20, 2017, the Defendant terminated the Plaintiff's employment.

44. When Defendant terminated Plaintiff, it told him "as of today, your position at the BJCTA is being eliminated and your services will no longer be needed."

45. Plaintiff's position was not eliminated.

46. An African-American employee assumed Plaintiff' job duties and responsibilities as Staff Accountant.

47. Plaintiff's race was a motivating factor in the Defendant's decision to terminate his employment.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this Court award the following relief:

a. Backpay, including interest;

b. Compensatory damages to be determined by the trier of fact;

c. Punitive damages to be determined by the trier of fact;

d. Injunctive relief including training, reinstatement, and/or reasonable front-pay;

e. that relief which is fair and equitable; and

f. costs, including a reasonable attorneys' fee.

**COUNT TWO**
**42 USC §1981– RACE DISCRIMINATION**
**(Disparate Treatment and Termination)**

48. Plaintiff's race is Caucasian.

49. Plaintiff worked for the Defendant as its Finance Manager from July 23, 2012 to November 2015.

50. Plaintiff met the qualifications to hold the position of Finance Manager.

51. In January 2016, the Defendant demoted Plaintiff to the position of Staff Accountant.

52. Defendant alleged that the reason for Plaintiff's demotion was poor performance.

53. Plaintiff's performance was not poor.

54. African American employees who exhibited poor performance were not demoted.

55. Plaintiff worked as a Staff Accountant for the Defendant from November 2015 to May 30, 2017.

56. During Plaintiff's employment with the Defendant, the Defendant demonstrated a preference for hiring and promotion African American employees to key positions.

57. Defendant's Executive Team consists of a Director of Operations, Director of Customer Care and Marketing, and Director of I.T.

58. Defendant's Executive Team is 100% African American.

59. Over sixty percent of the Defendant's Board Members are African American.

60. Plaintiff observed a pattern and practice of the Defendant of demoting and terminating Caucasian employees and replacing them with African American employees.

61. Plaintiff observed that Defendant scrutinized and was critical of the performance of Caucasian employees.

62. Plaintiff observed Defendant did not scrutinize African American employees' performance, nor was it critical of the performance of African American employees.

63. As a Staff Accountant, Plaintiff observed that his African American employees were not disciplined nor demoted for poor performance.

64. While Plaintiff believes discovery will identify and reveal other African Americans who received more favorable treatment than the Plaintiff and other Caucasian employees, he recalls the following instances of racially disparate treatment:

a. Starr Culpepper, an African American female, and Darryl Grayson, an African American male were permitted to leave work early and without notice. They did not receive discipline; they were promoted.

    b. Sanchez Lee, an African American male was promoted because of his race and given a vehicle to drive. Mr. Lee had numerous unwarranted altercations with Plaintiff and other Caucasian employees but was not disciplined. Plaintiff observed Mr. Lee working under the influence of alcoholic beverages at work without discipline.

c. Marshaun Brown, an African American male was not terminated even though he was found to have been driving a vehicle of the Defendant's without a valid driver's license. Part of Mr. Brown's job duties required him to make deliveries and deposits for the Defendant.

65. In March 2017, Defendant classified Plaintiff as a salaried employee.

66. As a salaried employee, Plaintiff was not paid based on the amount of time he worked.

67. As a salaried employee, Plaintiff was classified by the Defendant as exempt from overtime.

68. Because Plaintiff was a salaried employee, he was not required to clock in or clock out.

69. Defendant did not keep records of the time worked by salaried employees.

70. Defendant's attendance policy applied progressive discipline for infractions.

71. On May 20, 2017, the Defendant terminated the Plaintiff's employment.

72. When Defendant terminated Plaintiff, it told him "as of today, your position at the BJCTA is being eliminated and your services will no longer be needed."

73. Plaintiff's position was not eliminated.

74. An African-American employee assumed Plaintiff' job duties and responsibilities as Staff Accountant.

75. When the Plaintiff sought unemployment compensation benefits following his termination, the Defendant gave a new and contradictory reason for his termination: that he left

work on May 19, 2017 without permission.

76. Plaintiff had permission to leave work on May 19, 2017 to attend his son's school awards ceremony.

77. Plaintiff's request to attend his son's awards ceremony on May 19,2017 was approved in advance of May 19, 2017 by the Plaintiff's supervisor.

78. Defendant terminated the Plaintiff because of his race.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this Court award the following relief:

a. Backpay, including interest;

b. Compensatory damages to be determined by the trier of fact;

c. Punitive damages to be determined by the trier of fact;

d. Injunctive relief including training, reinstatement, and/or reasonable front-pay;

e. that relief which is fair and equitable; and

f. costs, including a reasonable attorneys' fee.

**COUNT THREE**
**TITLE VII – RETALIATION**

79. Plaintiff experienced consistent micromanagement, bullying and harassment because of his race.

80. Plaintiff observed that Defendant subjected white employees to discipline, micromanagement, bullying and harassment that were not imposed on African American employees.

81. Plaintiff complained to Phyllis Goode, Alethia Weary, and Jamie Endsley that he believed he and others were being discriminated against because of their race.

82. Following Plaintiff's complaints, Defendant increased its scrutiny of him at work and looked for reasons to terminate him.

83. Defendant disciplined and terminated the Plaintiff because of his complaints of discrimination.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this Court award the following relief:

a. Backpay, including interest;

b. Compensatory damages to be determined by the trier of fact;

c. Punitive damages to be determined by the trier of fact;

d. Injunctive relief including training, reinstatement, and/or reasonable front-pay;

e. that relief which is fair and equitable; and

f. costs, including a reasonable attorneys' fee.

**COUNT FOUR**
**42 USC §1981 – RETALIATION**

79. Plaintiff experienced consistent micromanagement, bullying and harassment because of his race.

80. Plaintiff observed that Defendant subjected white employees to discipline, micromanagement, bullying and harassment that were not imposed on African American employees.

81. Plaintiff complained to Phyllis Goode, Alethia Weary, and Jamie Endsley that he believed he and others were being discriminated against because of their race.

82. Following Plaintiff's complaints, Defendant increased its scrutiny of him at work and looked for reasons to terminate him.

83. Defendant disciplined and terminated the Plaintiff because of his complaints of discrimination.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this Court award the following relief:

a. Backpay, including interest;

b. Compensatory damages to be determined by the trier of fact;

c. Punitive damages to be determined by the trier of fact;

d. Injunctive relief including training, reinstatement, and/or reasonable front-pay;

e. that relief which is fair and equitable; and

f. costs, including a reasonable attorneys' fee.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY**

CYNTHIA FORMAN WILKINSON
State Bar I.D. No. ASB-9950-L68C
Attorney for Plaintiff

**OF COUNSEL:**

**WILKINSON LAW FIRM, P.C.**
215 N. Richard Arrington Jr. Blvd.
Suite 301
Birmingham, Alabama 35203
Tel.: (205) 250-7866
Fax: (205) 250-7869
E-mail: wilkinsonefile@wilkinsonfirm.net

HEATHER NEWSOM LEONARD
State Bar I.D. No. ASB-1152-061H
Attorney for Plaintiff

**OF COUNSEL:**

**HEATHER LEONARD, P.C.**
2105 Devereux Circle, Suite 111
Birmingham, AL 35243
Tel.: (205) 977-5421
Fax: (205) 278-1400
E-mail: Heather@HeatherLeonardPC.com

**PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL:**

Theodore Smith, Chairman of Board
BJCTA Administrative Offices
2121 Rev. Abraham Woods Jr. Blvd
Suite 500
Birmingham, AL 35203

# EXHIBIT 1

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | FEPA<br>EEOC | 420-2018-00213 |

and EEOC

State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) | | |
|---|---|---|---|
| Destry Cornelius | | | |
| STREET ADDRESS CITY, STATE AND ZIP CODE | | SSN | DATE OF BIRTH |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Birmingham-Jefferson County Transit Authority | 300+ | 205-521-0161 |

| STREET ADDRESS CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| 2121 Reverend Abraham Woods, Jr. Blvd., Suite 500, Birmingham, AL 35202 | Jefferson |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| | |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|
| XX RACE COLOR SEX RELIGION AGE | 2012 – May 30, 2017 |
| XX RETALIATION NATIONAL ORIGIN DISABILITY OTHER (Specify) | CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):* I am Caucasian and I began working for the above named employer on or about July 23, 2012 as Finance Manager. I was demoted in or around November 2015, after I was disciplined and suspended for three (3) days for false and unjustified issues with my performance. I appealed the suspension and set forth the reasons why the disciplinary action and suspension were not justified. I was demoted to a Staff Accountant position.

My employer has a history of demoting and terminating Caucasian employees and replacing them with African Americans. As a Staff Accountant, I have been discriminated against and harassed because I am not African American. I have also been retaliated against because I complained about African American employees were being treated more favorably than me and other Caucasian employees. African American co-corkers and employees were not disciplined or demoted when their performance was bad. In or around March 2017, I was made a salaried employee and I did not clock in or out. I was terminated on or about May 30, 2017. In or around March 2017, I received a verbal counseling regarding attendance. This was the only discipline I received prior to being terminated. I was told that my position was being eliminated and that my attendance was one of the reasons for my termination. However, the stated reasons for my termination are false because I had permission to be late for work or out of the office, I did not have an attendance issue and since my termination I have seen my position posted for hiring and an African American has been placed in my position and is performing the duties I performed while I was employed.

(particulars continued on second page)

RECEIVED

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements)<br>My Commission Expires 9-23-19<br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br>10/18/17<br>Date Charging Party (Signature) | SIGNATURE OF COMPLAINANT<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) 18th, October, 2017 |

U.S. EEOC

EEOC Form 161 (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: **Destry Cornelius**
[redacted]

From: **Birmingham District Office**
**Ridge Park Place**
**1130 22nd Street**
**Birmingham, AL 35205**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **420-2018-00213** | **IRAN CRUZ, Investigator** | **(205) 212-2134** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

[signature]

**BRADLEY A. ANDERSON,**
**District Director**

MAR - 1 2019
*(Date Mailed)*

Enclosures(s)

cc:

**BIRMINGHAM-JEFFERSON COUNTY TRANSIT AUTHORITY**
**c/o Michael A. Casey, Jr.**
**DONAHUE & ASSOCIATES, LLC.**
**1020 22nd Street South**
**Birmingham, AL 35205**

**WILKINSON LAW FIRM, PC**
**c/o Cynthia Wilkinson**
**215 North Richard Arrington Jr. Blvd.**
**Suite 811**
**Birmingham, AL 35203**